IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

RODNEY JARROD DENSON,           )
                                )
                Petitioner,     )
                                )
         v.                     )          CV 322-098
                                )           (Formerly CR 320-001)
UNITED STATES OF AMERICA,        )
                                )
                Respondent.     )

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate at FCI Butner Low, in Butner, North Carolina, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. This case is now before the Court on Respondent's motion to dismiss. (Doc. no. 5.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 5), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.     BACKGROUND

### A.     Charges

On January 8, 2020, the grand jury in the Southern District of Georgia charged Petitioner and seven co-defendants in a twelve-count Indictment, with Petitioner charged in eight of those counts, all related to possession of controlled substances or firearms. United States v. Denson, CR 320-001, doc. no. 3 (S.D. Ga. Jan. 8, 2020) (hereinafter "CR 320-001"). Appointed counsel S. Ryan Dixon represented Petitioner. CR 320-001, doc. no. 54.

B.      **Agreement to Plead Guilty**

On May 26, 2022, Petitioner appeared with counsel and pled guilty to Counts One and Five: Conspiracy to Possess with Intent to Distribute Controlled Substances (Methamphetamine, Cocaine, Cocaine Base and Marijuana) in violation of 21 U.S.C. § 846 and Conspiracy to Possess Firearms in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(o).  CR 320-001, doc. nos. 205-207.  Petitioner pled to the lesser included count in Count One, and Counts One and Five each carried a maximum penalty of not more than twenty years imprisonment.  Id., doc. no. 4.  In exchange, the government agreed to dismiss the six remaining counts of the Indictment.  Id., doc. no. 207, ("Plea Agreement"), p. 6.  The government further agreed not to object to a two-point acceptance of responsibility reduction and move for an additional one-point reduction if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction.  Id. at 5.

Petitioner's Plea Agreement contained the following factual basis for his guilty plea:

Beginning on a date at least as early as April, 2017, up to and including the return date of this indictment, the precise dates being unknown, in Laurens County, within the Southern District of Georgia, and elsewhere, the defendant, RODNEY JARROD DENSON aka "RD" aided and abetted by others known and unknown, did knowingly and intentionally combine, conspire, confederate and agree together and with each other, and with others known and unknown, to possess with intent to distribute and to distribute controlled substances. Further, as a result of DENSON's own conduct, and the conduct of other conspirators, it was reasonably foreseeable to each that this conspiracy involved methamphetamine, cocaine, cocaine base, and marijuana. All in violation of Title 21, United States Code, Section 846.

. . . .

Beginning on a date at least as early as April, 2017, up to and including June 21, 2019 in Laurens County, within the Southern District of Georgia, the defendant, RODNEY JARROD DENSON aka "RD" did knowingly combine, conspire, confederate, and agree with each other to possess firearms, to wit:

- a Charter Arms, model: Undercoverette, .32 caliber revolver;
- a Smith & Wesson, model: 37 Air Weight, .38 caliber revolver;
- a Romarm/Cugir, model: Draco, 7.62x39mm, semi-auto pistol;
- a Ruger, model: 10/22, .22 cafiber, rifle; and
- an Ithaca Gun Co., model: M-49, .22 caliber, rifle;

in furtherance of a drug crime, which the defendants may be prosecuted in a court of the United States, specifically: Conspiracy to possess With Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, as alleged in Count One this Indictment, in violation of Title 18, United States Code, Section 924(o).

Id. at 2-3.  Petitioner also agreed that, for purposes of the Sentencing Guidelines, the offense involved at least 150 grams of methamphetamine (actual) but fewer than 500 grams of methamphetamine (actual), and also involved an amount of cocaine, crack cocaine, and marijuana.  Id. at 6.

By signing the Plea Agreement, Petitioner "entirely waive[d] his right to a direct appeal of his conviction and sentence on any ground" unless (1) the Court sentenced him above the statutory maximum, (2) the Court sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence.  Id. at 10.  Absent one of the above-mentioned three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal."  Id.  Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel.  Id.  at 11.

Also by signing the Plea Agreement, Petitioner agreed he read and carefully reviewed it with Mr. Dixon, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect."  Id. at 14.  Petitioner additionally attested "that his attorney has represented him faithfully, skillfully, and diligently, and [Petitioner] is completely satisfied with the legal advice given and the work performed by

his attorney." Id. at 12.

United States District Judge Dudley H. Bowen, Jr., conducted  Defendant's change of plea hearing with two co-defendants.  Judge Bowen found Petitioner was competent to enter a guilty plea if he so desired.  Id., doc. no. 232, (Rule 11 Tr.), p. 9.  Petitioner testified under oath he had sufficient time to discuss his case with Mr. Dixon and was satisfied with counsel's preparation and handling of the case.  Id. at 9-10.  Judge Bowen reviewed the two counts to which Petitioner was pleading guilty and the maximum prison term of twenty years.  Id. at 10, 13-14, 16-17.

Judge Bowen explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Among the list of rights explained, Judge Bowen reviewed the right to trial by jury, the presumption of innocence, the government's burden of proof, the right to present and cross-examine witnesses, and the right to remain silent.  Id. at 18.  Petitioner confirmed no one had forced, threatened, or pressured him into pleading guilty.  Id. at 20.  In addition, Judge Bowen reviewed the appeal waiver and its limited exceptions, as well as the collateral attack waiver.  Id. at 26.  Further, Judge Bowen confirmed that, other than the promises the government made in the Plea Agreement, no one had made him any promises in order to get him to plead guilty; Petitioner affirmed that no one had given him any guarantee, prediction, or prophecy as to the sentence that would be imposed. Id. at 29-30.

Next, Judge Bowen heard a factual basis for the guilty plea from Special Agent Ronald Rhodes with the Bureau of Alcohol, Tobacco, Firearms, and Explosives.  In April 2017, the Drug Enforcement Agency learned Petitioner and others were distributing drugs out of Dublin, Georgia, and knew specifically of six completed purchases and one attempted purchase of

drugs from Petitioner before August 2018.  Id. at 31.  SA Rhodes described an October 2018 traffic stop where Petitioner's co-defendant was discovered with half a kilogram of cocaine on route to Dublin on behalf of Petitioner and another co-defendant.  Id.  Throughout 2019, Petitioner's phone was tapped and five search warrants were carried out, including two searches of Petitioner's home and a search of a distribution center in Dublin.  Id. at 32.  Drug and gun evidence were found at the distribution center.  Id. at 32-33.  Petitioner did not have any disagreement with the testimony of SA Rhodes and confirmed he was guilty of, and wanted to plead guilty to, Counts One and Five of the Indictment.  Id. at 33-36.

  **C. Sentencing**

  The United States Probation Office prepared a PSI setting Petitioner's Total Offense Level at thirty-six, Criminal History Category at IV, and Guidelines imprisonment range at 262 to 327 months.  PSI ¶¶ 43, 56, 85.  In accordance with the stipulation in the plea agreement, Petitioner's base level for Count One was set at thirty-two because he agreed to be held accountable for the possession and distribution of not less than 150 grams of methamphetamine (actual), but less than 500 grams of methamphetamine (actual).  PSI ¶ 25.  Petitioner also received a three-point adjustment under USSG § 3B1.1(b) because he was deemed a manager or supervisor of criminal activity that involved five or more participants.  PSI ¶ 29.  Petitioner's ultimate offense level was thirty-nine; however, because Petitioner demonstrated acceptance of responsibility and assisted in his own prosecution by timely announcing his intent to plea, the offense level was reduced by three for acceptance of responsibility pursuant to USSG § 3E1.1(a)-(b).  PSI ¶¶ 40-43.  For his criminal history score, Petitioner received three points for a 2007 drug distribution and possession conviction, three points for a 2011 forgery conviction, and one point for a 2011 possession of marijuana conviction.  PSI ¶¶ 52-55.  He was sentenced

to only twelve months' probation for the 2015 possession of marijuana.  PSI ¶ 54.

The statutory maximum term of imprisonment for both Counts One and Five was twenty years, meaning Petitioner faced a maximum of forty years imprisonment.  21 U.S.C. § 841; 21 U.S.C. § 841(b)(1)(C) and (e); 18 U.S.C. § 924(o); PSI ¶ 84.  Petitioner raised no objections to the PSI.  CR 320-001, doc. no. 246, p. 25; see also doc. no. 273 (noting no objections to PSI at sentencing); Court's recording system, *For the Record*, Sept. 16, 2021, 10:34:28-10:35:03 (same).  Judge Bowen adopted the PSI's findings and sentenced Petitioner to 262 months' imprisonment, with the maximum 240 months to be served for Count One, and 22 months served for County Five.  Id., doc. nos. 273-275.  In keeping with the terms of the Plea Agreement, Petitioner did not file a direct appeal.

### D. § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following claims regarding sentencing calculations:

(1) Petitioner should not have received a three-point enhancement for a manager or supervisor role under U.S.S.G. § 3B1.1(b) because he was not a manger or supervisor of more than five people;

(2) Petitioner's base offense level of 32 for Count One was based on a drug amount established without a purity-level determination; and

(3) Petitioner's 2015 possession of marijuana conviction should not have contributed one point to his criminal history score because he did not complete the twelve-months of probation for that charge.

(See generally doc. no. 1 ("Petition").)  Respondent moves to dismiss the petition, arguing Petitioner's grounds are non-cognizable, barred by the collateral attack waiver, and procedurally defaulted.  (Doc. no. 5.)

In his response to the motion to dismiss, Petitioner argues Ground One is not procedurally defaulted or non-cognizable by attributing the alleged error to counsel's ineffectiveness. He argues counsel should have objected to the manager or supervisor role and should have appealed the sentence. (Doc. no. 9, pp. 1-3.) Petitioner further alleges counsel never advised him of his right to appeal and states he incorrectly assumed counsel filed an appeal for him. (Id. at 2.) For Ground Three, Petitioner alleges his state marijuana possession conviction should not have enhanced his criminal history score because the President of the United States has pardoned all simple marijuana possession convictions. (Id. at 4.) Petitioner concludes his brief broadly stating his "claims are based on ineffective assistance of counsel" and therefore not barred by the collateral attack waiver. (Id.) Respondent filed a reply, arguing any ineffective assistance of counsel arguments are meritless. (Doc. no. 11.)

## II.    DISCUSSION

### A.    Petitioner Does Not Allege an Independent Ground of Ineffective Assistance of Counsel

Petitioner's § 2255 motion makes no mention of ineffective assistance of counsel or counsel's failure to advise Petitioner of his right to appeal in relation to any of the three listed grounds. Only in his response to the motion to dismiss does Petitioner attribute his claims to ineffective assistance of counsel, though his response still does not discuss Ground Two. Further, Petitioner only raises the appeal issue to argue against procedural default, as Petitioner writes:

> The Government[] claims Denson's claims are procedurally defaulted are mistaken. Denson [wrote] a letter to the Southern District of Georgia inquiring about his direct appeal status. He was inform[ed] that his attorney never filed [an] appeal and was directed to file a [§ 2255 motion]. Denson's attorney never advised Denson of his right to appeal, and with issues Denson raised; showed that his sentencing guideline could have been lower had it not been for his

lawyer ineffectiveness; which shows a sufficient cause and prejudice by Denson attorney.

(Doc. no. 9, pp. 2-3.)

While the Court must afford a liberal construction to a *pro se* litigant's pleadings, the Court has no duty to re-write Petitioner's pleading for him.  Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006); Chew v. United States, No. CR415-182, 2022 WL 17039144, at *1 (S.D. Ga. Nov. 17, 2022) (explaining Court may not "conjure an argument, even supposing one could be conjured," in objection to dismissal of *pro se* § 2255 motion).  Petitioner has yet to allege ineffective assistance of counsel as an independent ground for federal habeas relief, and the Court will only consider his Sixth Amendment arguments in relation to cause and prejudice to overcome procedural default.  See Winston v. United States, No. 8:06-CR-67-T-27MAP, 2013 WL 6198858, at *3 (M.D. Fla. Nov. 27, 2013) (declining to construe habeas grounds as ineffective assistance claims when "[e]ach ground clearly and unequivocally raises a substantive basis for relief unrelated to the constitutional right to effective assistance of counsel").

**B.      Petitioner Cannot Seek § 2255 Relief for His Stated Grounds**

**1.      Bars to § 2255 Review**

Petitioner's three grounds all concern sentence calculation and the PSI.  Accordingly, all three grounds are unfit for federal habeas review for several reasons.

First, when a defendant has been given an opportunity to review his PSI and to be heard at sentencing, his failure to raise a challenge to the PSI at sentencing will preclude him from raising the challenge in a § 2255 motion.  United States v. Peloso, 824 F.2d 914, 915 (11th Cir. 1987); Simmons v. United States, 777 F.2d 660, 661-62 (11th Cir. 1985); see also United States v. McCray, 567 F. App'x 859, 860 (11th Cir. 2014) ("[A] defendant cannot challenge

the accuracy of his presentencing investigation report for the first time in a collateral attack."). It is undisputed in the record that Petitioner "and his attorney had access to the [PSI] before sentencing, had an opportunity to raise objections . . . but did not include the objections now made," or any objections for that matter.  Simmons, 777 F.2d at 661-62.  Because Petitioner's grounds were not first presented as objections to the PSI, his motion should be denied.  See Schoener v. United States, No. CR416-313, 2018 WL 1177936, at *2 (S.D. Ga. Feb. 1, 2018) (holding any alleged error in presentence report is "not cognizable in a § 2255 motion."), adopted by 2018 WL 1176844 (S.D. Ga. Mar. 6, 2018); Lewis v. United States, No. CR604-10, 2005 WL 2237606, at *2 (S.D. Ga. Aug. 11, 2005) ("[Petitioner's] failure to object prevents him from raising a challenge to the PSI in a § 2255 motion.").

Second, alleged errors concerning the Sentencing Guidelines are not generally cognizable on collateral attack.  Spencer v. United States, 773 F.3d 1132, 1138-40 (11th Cir. 2014); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (per curiam).  For a claim to be cognizable under § 2255, petitioners must have asserted all claims on appeal and relief is only provided when the alleged misconduct "would, if condoned, result in a complete miscarriage of justice."  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)).  For errors concerning sentencing, "a miscarriage of justice cognizable under § 2255 occurs when the sentence is in excess of that authorized by law."  Spencer, 773 F.3d at 1141 (quoting Sun Bear v. United States, 644 F.3d 700, 706 (8th Cir. 2011)).  Petitioner makes no argument that his sentence, which is below the statutory maximum, is in excess of that authorized by law, and he did not appeal his sentence.  His grounds are non-cognizable.

Third, most critically, Petitioner did not file an appeal, and therefore procedurally defaulted all three grounds.  A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)).  "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994)).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055.  In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

### 2.    Cause and Prejudice

The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions:  (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Mills, 36 F.3d at 1055-56 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  "Cause" requires a showing of some external impediment that prevented a claim from previously being raised. Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  "[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (citations omitted); see also United States v. Bane, 948 F.3d 1290, 1297 (11th Cir. 2020) ("[A] claim is not novel when counsel

made a conscious choice not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel." (citations omitted)); Lynn, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.")

To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

Montano, 398 F.3d at 1280 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). Actual innocence "applies to a severely confined category: cases in which new reliable evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." McQuiggin v. Perkins, 569 U.S. 383, 394-95 (2013).

Petitioner makes no arguments explaining his procedural default of Ground Two. He suffers no prejudice regardless. His plea agreement, which, as explained *infra*, was knowing and voluntary, stipulated the drug type and amount, which was then used in the PSI, which the Court adopted without objection. "For purposes of sentencing, the district court . . . may base its factual findings on undisputed statements found in the PSI, because they are factual findings to which the defendant has assented." United States v. Beckles, 565 F.3d 832, 843 (11th Cir.

2009).  The stipulation obviated any need for purity testing which Petitioner now argues was necessary.  "Indeed, the defendant's failure to object to conclusory statements in the PSI renders those statements undisputed and permits the sentencing court to rely upon them without error *even if there is an absence of supporting evidence*."  Id. at 844  (emphasis added) (citing United States v. Hedges, 175 F.3d 1312, 1315 (11th Cir. 1999)).  Petitioner has not shown any error prejudicing him, let alone error "with error of constitutional dimensions." Frady, 456 U.S. at 170.  He likewise has not presented any new reliable evidence regarding the quantity or quality of the drug evidence to which he pled guilty, prohibiting him from arguing for the actual innocence exception.

Petitioner's argument in response to procedural default of Ground Three is a recent Presidential pardon of federal convictions for simple marijuana possession offenses.  However, Petitioner has a state, not federal, marijuana possession conviction, and nothing indicates his state conviction has been impacted by federal action.  A federal pardon of federal convictions has no bearing on his criminal history score, procedural default, or actual innocence of the indicted offense.  See McKay v. United States, 657 F.3d 1190, 1199 (11th Cir. 2011) ("We thus decline to extend the actual innocence of sentence exception to claims of legal innocence of a predicate offense justifying an enhanced sentence.").

Petitioner argues cause and prejudice for his claims in Ground One by alleging his attorney (1) failed to object to the three-point enhancement under U.S.S.G. § 3B1.1(b)  and (2) failed to advise him of his appellate rights.  While Petitioner does not argue so, presumably counsel's failure to advise him of his appellate rights could constitute cause for failure to raise all three grounds of his § 2255 motion.  Ineffective assistance of counsel may serve as the necessary cause to address the merits of a procedurally defaulted claim.  Ward v. Hall, 592

12

F.3d 1144, 1157 (11th Cir. 2010).   However, as examined below, Petitioner's claims are meritless.

   i.  **Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden to Show Ineffective Assistance of Counsel**

  Ineffective assistance of counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  <u>See</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003); <u>United States v. Armstrong</u>, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  <u>Strickland</u>, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  "An attorney's actions need only fall within 'the wide range of professionally competent assistance' to pass constitutional muster," and "courts should not second-guess counsel's assistance" because "[e]ven the best criminal defense attorneys would not defend a particular client the same way."  <u>Philmore v McNeil</u>, 575 F.3d 1251, 1260 (11th Cir. 2009) (citations omitted).

  Strategic decisions are entitled to a "heavy measure of deference."  <u>Strickland</u>, 466 U.S. at 691.  To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice.  <u>Strickland</u>, 466 U.S. at 690. "<u>Strickland</u> permits attorneys to choose between viable avenues of defense, and attorneys are not ineffective for making a reasonable choice to take one avenue to the exclusion of another, or for selecting a reasonable course without considering some other, equally reasonable course. <u>LeCroy v. United States</u>, 739 F.3d 1297, 1313 (11th Cir. 2014).

Thus, a petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc)). The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover, "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client." United States v. Winfield, 960

F.2d 970, 974 (11th Cir. 1992) (*per curiam*) (citing <u>Strickland</u>, 466 U.S. at 692-93); <u>see also</u> <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000).

> **ii.** **Petitioner's Ineffective Assistance of Counsel Arguments Do Not Overcome His Procedural Default**

For his first contention, Petitioner never claims he directed his attorney to file an appeal, and he only claims his attorney was ineffective by failing to advise him of his right to appeal. Failure to consult with a defendant regarding an appeal can constitute ineffective assistance of counsel, but only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 480 (2000). In the case of a guilty plea, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." <u>Id.</u>

There is no evidence counsel was ineffective here. Petitioner pled guilty, waived his appellate rights, had six counts against him dropped, and received a sentence at the very bottom of the guidelines range. A rational defendant would not want to appeal; indeed, there were no nonfrivolous grounds for appeal. Petitioner also did not reasonably demonstrate he was interested in appealing. Petitioner never alleges he gave counsel any instructions regarding an appeal, and the record clearly contradicts Petitioner's general claim he was not advised of his rights on appeal. On September 16, 2021, Petitioner signed a Post-Conviction Consultation Certification where he affirmed he did not want to file an appeal after his counsel advised him of his rights to an appeal. CR 320-001, doc. no. 272. Further, at the change of plea hearing

examined *infra*, Petitioner knowingly and voluntarily waived his appellate rights through the waivers contained in his plea agreement.

In sum, Petitioner's allegations do not show ineffective assistance of counsel as to the appeal issue, and therefore cannot constitute cause or prejudice to overcome procedural default of all three grounds of his § 2255 motion.  See Graham v. United States, No. 2:17-CR-2, 2021 WL 5858585, at *11 (S.D. Ga. Nov. 12, 2021) (dismissing ineffective assistance claims on whether counsel consulted with Defendant regarding an appeal in light of post-conviction consultation certification), *adopted by* WL 5855839 (S.D. Ga. Dec. 8, 2021); Newham v. United States, No. 2:14-CR-12, 2017 WL 1823152, at *9 (S.D. Ga. May 5, 2017), *adopted by* 2017 WL 2589584 (S.D. Ga. June 14, 2017) (same); Medlock v. United States, No. CR413-007, 2016 WL 5338514, at *2 (S.D. Ga. Sept. 22, 2016) (finding no cause or prejudice for failure to file appeal when Petitioner directed counsel in writing not to file appeal in the post-conviction consultation certification), *adopted by* 2017 WL 1650029 (S.D. Ga. Apr. 28, 2017); see also Caffery v. United States, No. 5:18-CR-108-KOB-JEO, 2022 WL 4484606, at *9-10 (N.D. Ala. Sept. 27, 2022) (holding counsel was not required to advise defendant of appellate rights when record showed defendant waived appellate rights and never expressed interest in appeal).

Petitioner's remaining ineffective assistance argument relates only to Ground One, whether he should have been deemed a manager or supervisor for the purposes of the sentencing guidelines.  U.S.S.G. 3B1.1(b) provides for a three-point increase to the offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."  Petitioner contends that, even though seven people were indicted in the conspiracy, he was not a

supervisor over five or more of those members.  (<u>See generally</u> doc. no. 1, p. 4; doc. no. 9, p. 3.)  As he explains: "it's just 7 people in my indictment and one of them is above me[.] It wasn't 5 people that I was over . . . ."  (Doc. no. 1, p. 4.)

Petitioner misunderstands the requirements of U.S.S.G. 3B1.1.  The sentencing guidelines do not consider how many people a defendant supervised, and "assertion of control or influence over only one individual is enough . . . ." <u>United States v. Jiminez</u>, 224 F.3d 1243, 1251 (11th Cir. 2000); <u>United States v. Njau</u>, 386 F.3d 1039, 1041 (11th Cir. 2004) (affirming application of § 3B1.1(b) to defendant who supervised at least one person in criminal scheme). Petitioner does not dispute that he played a supervisory or managerial role in the conspiracy or that more than five people were involved in the conspiracy.  Any objection to his designation would be meritless, meaning Petitioner suffered no prejudice and counsel was not ineffective. <u>See</u> <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit.").  Because there was no ineffective assistance of counsel as to Ground One, there was also no cause or prejudice to overcome procedural default.

Finally, regarding actual innocence, Petitioner does not allege *factual* innocence and only takes issue with his sentence calculation.  <u>See</u> <u>Pruitt v. United States</u>, No. CIV. 13-00456-KD, 2014 WL 2993807, at *5-6 (S.D. Ala. July 3, 2014) (finding Petitioner failed actual innocence exception by only contesting underlying facts of his supervisory/managerial role). Thus, Petitioner has procedurally defaulted on all of his grounds for relief and has not provided any adequate reason to avoid default.  His claims are barred and his § 2255 motion should be dismissed.

**C.     Petitioner's Grounds Are Barred by a Valid Collateral Attack Waiver**

Even if the petition's grounds were not procedurally defaulted, non-cognizable, or waived, they are still barred by a valid collateral attack waiver in the plea agreement.  All of Petitioner's grounds do not allege ineffective assistance of counsel and instead raise issues with sentence calculation and the PSI.  As Petitioner's plea agreement contains a valid collateral attack waiver, the Court cannot consider the petition.

**1.     Petitioner's Guilty Plea Was Knowing and Voluntary**

**i.     Background**

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing and voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent

admission of guilt." Id. Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (*per curiam*) (citations omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### ii.     Judge Bowen's Colloquy with Petitioner Satisfied the Three Core Principles

Judge Bowen informed Petitioner in clear terms of the charge to which he was pleading guilty, and Petitioner testified he understood the charge. Rule 11 Tr., pp. 13-18. Judge Bowen also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights. Id. at 18. Petitioner testified that other than the promises the government made in the Plea Agreement, no one made promises to get him to plead guilty, and Judge Bowen confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement. Id. at 29-30. Petitioner agreed no one made any "promise, prediction or prophecy" that he would receive a specific sentence. Id. at 30. Judge Bowen informed Petitioner of the possible penalty he faced upon conviction. In

particular, Judge Bowen explained the maximum twenty-year prison term and potential lifetime supervised release term.  Id. at 10-14.  Petitioner testified he understood the potential penalties.  Id. at 14.

When asked, Petitioner stated he understood the charges and what the government would have to prove for the charges and had enough time to discuss the charges and the case with Mr. Dixon.  Id. at 9-14; see also Plea Agreement, p. 12 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney); id. at 14 ("I have read and carefully reviewed this agreement with my attorney.").

"[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings."  Blackledge v. Allison, 431 U.S. 63, 74 (1977); see United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely").  See also United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (per curiam) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court explaining "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea").

Judge Bowen's thorough plea colloquy ensured Petitioner understood both the nature of the charge and the consequences of his guilty plea, and Petitioner was not coerced into pleading guilty.  Moriarty, 429 F.3d at 1019.  Accordingly, the Court concludes Petitioner

entered a knowing and voluntary guilty plea to Conspiracy to Possess With Intent to Distribute and to Distribute Controlled Substances and Conspiracy to Possess Firearms in Furtherance of a Drug Trafficking Crime.  Petitioner has not argued, let alone shown, a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea.  Dominguez Benitez, 542 U.S. at 83.

### 2.    Collateral Attack Waiver

It is well settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary.  United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (per curiam); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1364-67 (N.D. Ga. 2004) (applying case law on waiver of direct appeal to waiver of collateral attack by § 2255 motion).  "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver."  Weaver, 275 F.3d at 1333.  If the government meets this burden, then the waiver is valid and enforceable.  See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the plea agreement signed and verified by Petitioner explicitly set forth that he was voluntarily waiving his right to a direct appeal of the conviction and sentence, as well as his right to collaterally attack the same on any ground other than ineffective assistance of

counsel.  Plea Agreement, p. 10-11.  None of the exceptions to the waiver apply because Petitioner's sentence for each count did not exceed the statutory maximum of twenty years imprisonment or the advisory Guidelines range as determined by Judge Bowen after reviewing the PSI, and the government did not appeal.  Moreover, Judge Bowen reviewed the appeal and collateral attack waiver provision in the plea agreement during the change of plea proceedings and confirmed Petitioner understood and agreed to the terms.  Rule 11 Tr., p. 26, 28.

Petitioner does not challenge his plea or waivers, and, as already explained, "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge, 431 U.S. at 74.  Thus, the record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary.  Therefore, enforcement of this valid collateral attack waiver bars Petitioner's claims in all three substantive grounds.  See United States v. Martin, 549 F. App'x 888, 889-90 (11th Cir. 2013) (*per curiam*) (refusing to consider claims of PSI errors based on knowing and voluntary sentence appeal waiver); Brown v. United States, 256 F. App'x 258, 262 (11th Cir. 2007) (*per curiam*) (refusing to consider merits of restitution issue due to sentence appeal waiver); Newell v. United States, No. 116CR0360ODEJFK1, 2019 WL 2616942 (N.D. Ga. May 22, 2019) (rejecting constitutional claims due to sentence appeal waiver), *adopted by* 2019 WL 2613457 (N.D. Ga. June 26, 2019); Mollica v. United States, No. 2:14-CR-329-KOB, 2019 WL 1296255 *23 (N.D. Ala. Mar. 21, 2019) (rejecting twenty-one substantive claims due to sentence appeal waiver).  Petitioner may not attack his conviction and sentence on any ground other than ineffective assistance of counsel, which, as explained *supra*, he has not.  His § 2255 motion should be dismissed.

III.    **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 5), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED AND RECOMMENDED this 31st day of March, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA